IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL SKIPPER,                  :

    Plaintiff,                    :

vs.                               :    CA 21-0276-MU

KILOLO KIJAKAZI,                  :
Acting Commissioner of Social Security,
                                  :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Darrell Skipper brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 23 & 24 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] the Court

---

[1] The parties waived oral argument. (*See* Docs. 22 & 25).

concludes that the Commissioner's decision denying benefits is due to be and hereby is affirmed.[2]

## I. Procedural Background

Plaintiff filed applications for supplemental security income and disability insurance benefits on or about October 16, 2018, alleging disability beginning on February 10, 2018. (*See* Doc. 13, PageID. 412-24). Skipper's claims were initially denied on January 11, 2019 (*id.,* PageID. 251-52 & 268-72) and, following Plaintiff's February 6, 2019 request for a hearing before an Administrative Law Judge ("ALJ") (*see id.,* PageID. 305-07), several hearings were conducted before an ALJ in this case, first on November 26, 2019 (*id.,* PageID. 135-66), and then on September 17, 2020 (*id.,* PageID. 167-209). The second hearing was conducted following a June 16, 2020 Order of the Appeals Council remanding the case back to the ALJ principally for consideration of the Plaintiff's mental impairments and resulting limitations. (*See id.,* PageID. 292-93). On December 24, 2020, following the second hearing, the ALJ issued a decision finding claimant not disabled and therefore, not entitled to a period of disability, disability insurance benefits, and supplemental security income. (*Id.,* PageID. 75-91). More specifically, the ALJ determined at the fifth step of the five-step sequential evaluation process that Skipper retains the residual functional capacity to perform light work, with limitations (*id.,* PageID. 81) and can perform those light jobs identified by the vocational expert ("VE") during the administrative hearing (*see id.,* PageID. 91; *compare id. with*

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 23 & 24 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

*id.,* PageID. 205-07). On January 14, 2021, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see id.,* PageID. 409-10); the Appeals Council denied Skipper's request for review on May 7, 2021 (*id.,* PageID. 60-63). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to epilepsy, degenerative disc disease, generalized anxiety disorder with panic attacks, and major depressive disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.     The claimant has the following severe impairments: epilepsy, degenerative disc disease, generalized anxiety disorder with panic attacks, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).**
>
> .    .    .
>
> **4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .    .    .
>
> **5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently climb ramps and stairs, stoop, kneel, crouch and crawl; he can occasionally balance; he should never climb ladders, ropes or scaffolds; he can frequently handle, finger and feel with his bilateral upper extremities; he can have only occasional exposure to extremes of heat; no exposure to hazards such as unprotected heights and dangerous machinery; he should not perform work around large bodies of water or perform commercial driving; he would be able to understand, remember and carry out simple instructions and tasks; he can tolerate changes in the workplace that are infrequent and gradually introduced;  he can have occasional work-related interaction with supervisors, co-workers and the general public.**
>
> .    .    .

      **6.**    **The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

      **7.**    **The claimant was born on February 10, 1977 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

      **8.**    **The claimant has at least a high school education (20 CFR 404.1564 and 416.964).**

      **9.**    **Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

      **10.**    **Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

. . .

      **11.**    **The claimant has not been under a disability, as defined in the Social Security Act, from February 10, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Doc. 13, PageID. 78, 79, 81, 90 & 91) (emphasis in original).

## II. Standard of Review and Claims on Appeal

The scope of this Court's review is limited to determining whether the Commissioner of Social Security, through the ALJ, applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

The Commissioner of Social Security employs a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. This sequential evaluation process considers:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[4] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f);

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

On appeal to this Court, Skipper asserts two reasons the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ's finding that the neuropsychological opinion of Dr. John R. Goff is not persuasive is not supported by substantial evidence and, therefore, the ALJ violated the regulations by improperly finding Dr. Goff's opinion unsupported and inconsistent; and (2) the ALJ committed reversible error in failing to find he meets Listing 12.02 . (*See generally* Doc. 16). The Court considers Skipper's claims in reverse order.

**A.     Step 3 and Listing 12.02.**  Skipper bears the burden of proving that he has an impairment (or combination of impairments) which meets or is medically equivalent to a listed impairment. *Frame v. Commissioner, Social Sec. Admin.,* 596 Fed.Appx. 908, 910 (11th Cir. Jan. 13, 2015). "To prevail at step three, the claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that h[is] impairment meets or medically equals a listed impairment. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed. 2d 967 (1990). 'For a claimant to show that h[is] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Id.,* quoting *Sullivan, supra.* Once an impairment is shown to meet or medically equal a listed impairment, a claimant is "conclusively presumed to be disabled based on . . . h[is] medical condition." *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997).[5]

Listing 12.02 is for neurocognitive disorders and is met by showing the following:

> A.    Medical documentation of a significant cognitive decline from a prior level of functioning in *one* or more of the cognitive areas:
>
> 1. Complex attention;
> 2. Executive function;
> 3. Learning and memory;
> 4. Language;
> 5. Perceptual motor; or
> 6. Social cognition.
>
> AND
>
> B.    Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning  (see 12.00F);

---

[5] Here, Skipper argues only that he meets Listing 12.02 (*see* Doc. 16, PageID. 956-58), so this Court's limits its adjudication to whether the evidence of record demonstrates that Plaintiff has an impairment (or combination of impairments) that meets Listing 12.02.

7

    1.  Understand, remember, or apply information (see 12.00E1).

    2.  Interact with others (see 12.00E2).

    3.  Concentrate, persist, or maintain pace (see 12.00E3).

    4.  Adapt or manage oneself (see 12.00E4).

20 CFR Part 404, Subpart P, App. 1, § 12.02 of the Listings.[6]

Here, the ALJ simply focused on the "B" criteria, to the exclusion of any other requirement (*see* Doc. 13, PageID. 79-81). Nevertheless, Skipper must still establish that he "meets" the A criteria. *See Frame, supra,* 596 Fed.Appx. at 910. In his brief, Skipper contends that the first portion of Listing 12.02 is met because Dr. Goff's IQ testing on November 12, 2019, revealed a full-scale IQ score of 71 and The Test of Premorbid Functioning "suggested" a premorbid functioning of 82 and Dr. Goff found the 11-point discrepancy statistically significant. (Doc. 16, PageID. 956, citing Doc. 13, PageID. 875). Unfortunately, this Court cannot agree with Plaintiff that he "meets" the first portion of Listing 12.02. The undersigned demurs in this regard because Plaintiff does not identify which one of the six cognitive areas in section A that he "meets" (*see* Doc. 16, PageID. 956), but even if this Court was to find that Plaintiff clearly meant to indicate that Dr. Goff's report reflects a significant cognitive decline from a prior level of functioning in the cognitive area of "[l]earning and memory," a "suggested" or "predicted" premorbid full scale IQ score cannot be what was intended by the Commissioner as

---

[6] Listing 12.02 can also be "met" by satisfying the "A" criteria just set out above **and** the "C" criteria. *See id.* However, it is not necessary in this case to consider application of the "C" criteria because Plaintiff's argument in this regard centers solely on A and B. (*See* Doc. 16, PageID. 956-58).

"[*m*]*edical documentation* of a significant cognitive decline from a prior level of functioning[.]" 20 CFR Part 404, Subpart P, App. 1, § 12.02 of the Listings. In other words, it is impossible for this Court to believe that the medical documentation needed to show a significant cognitive decline from a prior level of functioning in any one of the six cognitive areas listed in 12.02(A) could be "met" based on testing conducted on one isolated day. Accordingly, the undersigned cannot find that Plaintiff "meets" the first portion of Listing 12.02.

Even if this Court assumes, however, that Skipper "meets" the first portion of Listing 12.02, the ALJ's determination that Plaintiff does not "meet" the "B" criteria of Listing 12.02 is supported by substantial evidence.  The ALJ properly considered the paragraph B criteria and described how she approached the evaluation of the four functional areas, as follows:

> [T]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04 and 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has a moderate limitation. The claimant testified that he is forgetful and that he uses his mother to help him to remember things. However, during a psychological consultative examination, the claimant demonstrated normal recent and remote memory. At the hearing, on September 17, 2020, he alleged that he had problems with his memory; however, he was able to recall which prescription medications he took and when and how they have been adjusted, which doctor prescribed them, around the last time he saw these treating physicians, and he was able to recall his past work duties, which is indicative of his continued ability to understand, remember, and apply information. He also stated that he was able to

watch television during the day and call his children, as well as operate a lawn mower, which also shows his ability to remember, understand, and apply information in regard to operating appliances and machinery. Additionally, overall, at the hearing, he was able to recall historical and present events and answered all questions in a timely and appropriate manner. Based on the foregoing factors, I find that the claimant has only moderate restrictions in this domain.

In interacting with others, the claimant has a moderate limitation. The claimant testified that he gets nervous being around people, so he does not go shopping and has not gone to church in over a year. However, the claimant testified he spends time with his children every month and visits with friends. Additionally, at the hearing on September 17, 2020, the claimant testified that during the day he visited with his mother and grandmother down the hill, that he talked to his children on the phone, and that he visited with his three children on a monthly basis, which is indicative that he is not as socially limited as alleged. Based on the foregoing factors, I find that the claimant has only moderate restrictions in this domain.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant alleges that he has difficulty concentrating and completing tasks. However, records dated since his alleged onset date show that the claimant has lived alone and independently managed his personal care and household activities. At the hearing on September 17, 2020, the claimant alleged difficulty focusing; however, as previously discussed, he was able to recall which prescription medications he took and when and how they have been adjusted, which doctor prescribed them, around the last time he saw these treating physicians, and recalled his work history. He also stated that he is able to dress himself, watch television, and that only five or six months prior to this hearing, he was able to mow the lawn, which is indicative of his continued ability to concentrate, persist, or maintain pace. Finally, overall at the hearing, he was able to answer all questions and recall present ant historic events in a timely and appropriate manner. Based on the foregoing factors, I find the claimant has only moderate limitations in regard to concentration, persistence, or maintaining pace.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant alleges having difficulty getting along with others. A psychological consultative examiner felt that the claimant's judgment was adequate for work and financial type decisions. At the hearing on September 17, 2020, he testified that he was able to arrange for others to cook for him, perform his household chores for him, and do his grocery shopping for him; that he is able to live by himself; tend to his personal needs; and visit with others, which is indicative that he is not as

10

> limited as alleged. Although[] he arranges [for] others to cook for him, he stated that he is able [to] make sandwiches for himself and even mow the lawn with a mower only five to six months prior. He also stated he is able to dress himself. Based on the foregoing factors, I find the claimant has only moderate restrictions in this domain.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(Doc. 13, PageID. 20-22).

Despite this analysis, Plaintiff maintains that the ALJ's findings that he has moderate limitations in all domains is not supported by substantial evidence and that the ALJ, instead, should have found at least marked (if not extreme) limitations in all domains. This Court disagrees.

The ALJ properly explained and supported her paragraph B findings principally with a discussion of Skipper's hearing testimony and continuing activities, which reflect only moderate limitations. In the domain of understanding, remembering, or applying information, the ALJ acknowledged Plaintiff's testimony that he had memory problems and was forgetful but underscored Plaintiff's seamless hearing testimony regarding the prescription medications he took, when and how they were adjusted, which doctor prescribed those medications, the last time he saw his treating physicians, and his past work duties, as indicative of Plaintiff's ability to understand, remember, and apply information, such that he has a moderate limitation in this domain. (*Compare* Doc..13, PageID. 80 *with id.,* PageID. 173-74, 177-78 & 182).[7] In addition, the ALJ referenced

---

[7] The undersigned also notes that, without hesitation, Skipper offered his age and the ages of his children, mother, and grandmother, agreed he was a high school graduate (*see id.,* PageID. 173, 180 & 181), recalled he last worked in 2015 (*see id.,* PageID. 182), and explained to the ALJ that he receives his prescription medications by mail through a free drug program at UAB (*see id.,* PageID. 175).

Skipper's testimony regarding his ability to watch television during the day and telephone his children (*see id.,* PageID. 180-81) and noted that during a consultative psychological examination Skipper demonstrated normal recent and remote memory (*see id.,* PageID. 80).[8] Thus, the undersigned agrees with the Commissioner, that Plaintiff's own testimony and other referenced evidence substantially support the ALJ's finding that Skipper has a moderate limitation in understanding, remembering, or applying information.

With respect to interacting with others, the ALJ acknowledge Plaintiff's subjective complaints about being nervous around other people (*see id.,* PageID. 80) but noted that Plaintiff also testified that he talks with his children on the telephone and spends time with them monthly, sees/visits his mother and grandmother on a daily basis, and visits with friends (*compare id. with id.,* PageID. 181, 196 & 489).[9] This evidence provides substantial support for the ALJ's finding that Skipper has a moderate limitation in interacting with others.

Regarding concentration, persistence, or maintaining pace, the ALJ noted again Plaintiff's ability to recall specifics of his medical treatment history during the hearing

---

[8] The consultative examination referenced by the ALJ in her opinion was performed by Dr. Donald Blanton on January 7, 2019, Dr. Blanton noting at that time that Skipper's "memory was good for immediate recent and remote recall." (*Id.,* PageID. 757; *see also id.* ("He was able to recall his trip to the examination, his home address, his date of birth and his last meal accurately.")). Moreover, in the latter part of 2018, even Plaintiff's treating physician, Dr. Perry Timberlake, noted that Skipper's recent memory and remote memory were normal (Doc. 13, PageID. 783).

[9] The undersigned notes that a medical record from June of 2020 references Skipper's "new significant other" (Doc. 13, PageID. 928), and there is no indication in any of the pertinent medical records on file that Plaintiff could not interact adequately with the doctors who evaluated or treated him (*see generally* Doc. 13), all of which further bolsters the ALJ's finding that Skipper has only a moderate limitation in this domain.

(*see id.,* PageID. 80) and, as well, referenced Skipper's ability to watch television and dress himself (*compare id. with id.,* PageID. 182 & 485-86). In addition to the foregoing, Plaintiff reported that he can make a sandwich (*id.,* PageID. 180) and can iron (*id.,* PageID. 487), two activities that indicate the ability to sustain attention. And, finally, there are numerous references in the record that Plaintiff's concentration was "ok" and/or his cognitive functions were within normal limits. (*See id.,* PageID. 908, 910, 913 (Dr. Srilata Anne's clinical notes from August 20, 2020, July 16, 2020, and June 16, 2020)). This evidence provides substantial support for the ALJ's finding that Skipper has a moderate limitation in the domain of concentration, persistence, and maintaining pace.

Finally, the ALJ properly explained that the evidence shows Plaintiff has only a moderate limitation in his ability to adapt and manage himself. The ALJ found that Plaintiff can interact with other family members to arrange for their assistance in cooking and shopping for him and performing other household chores for him, despite his claim that he has difficulty getting along with others. (Doc. 13, PageID. 81). The ALJ also importantly noted that despite the assistance Plaintiff receives from others, he can and does live alone, he can otherwise tend to his personal needs (inclusive of dressing himself), he is able to make himself a sandwich, and a psychological consultative examiner noted that Skipper's judgment was adequate for work and financial-type decisions[10]. (*Id.*, PageID. 80 & 81)[11] And the undersigned would be remiss in failing to

---

[10] On January 7, 2019, Dr. Blanton noted that Skipper's "judgment was adequate for work and financial type decisions." (*Id.,* PageID. 757),

[11] It is noteworthy that the examination notes of Skipper's treating neurologist, Dr. James Houston, consistently contain references during 2019 and 2020 to Plaintiff being independent with respect to his activities of daily living. (*See, e.g., id.,* PageID. 792, 929 & 936). As well, Dr. Christopher Litton noted GAF scores of 68 and 69 throughout the first half of 2020 (Continued)

again note that Skipper has consistently shown an ability to interact with a variety of medical providers. (*See generally* Doc. 13). Therefore, this evidence provides substantial support for the ALJ's finding that Skipper has a moderate limitation in the domain of adapting or managing himself.

In light of the foregoing, Plaintiff's Step 3 argument need be overruled because substantial evidence in the record supports the ALJ's fining that Plaintiff does not have an impairment (or combination of impairments) that "meets" Listing 12.02.

   **B.**  **Whether the ALJ's Determination that the Opinion of Dr. John R. Goff is Not Persuasive is Supported by Substantial Evidence and Follows the Proper Legal Standards**.  Plaintiff contends that the reasons offered by the ALJ for finding Dr. Goff's opinion not persuasive are inconsistent with the evidence of record (*see* Doc. 16, PageID. 949-51) and, therefore, the ALJ violated the regulations by improperly finding Dr. Goff's opinion unsupported and inconsistent (*see id.,* PageID. 954-55).

As part of the process of determining a claimant's RFC, that is, "the most [he] can still do despite" the limitations caused by his impairments, 20 C.F.R. 404.1545(a)(1), an ALJ must take into consideration the medical opinions of treating, examining, and non-examining physicians and, indeed, this issue is often at the forefront in social security cases.  *See Kahle v. Commissioner of Social Sec.,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In March of 2017, the Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the new

---

(*see id.,* PageID. 893, 895 & 897), which, as set forth *infra*, are scores indicative of generally good functioning in terms of everyday activities.

regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see also Lee v. Saul,* 2020 WL 5413773, *5 (M.D. Ala. Sept. 9, 2020) ("The revisions [to Social Security regulations regarding the evaluation of medical evidence] state that the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources.' 20 C.F.R. § 404.1520c(a)."). The regulations go on to provide that when evaluating the persuasiveness of medical opinions, "[t]he most important factors to be considered are those of supportability and consistency[.]" *Id.* at *5; *see also Swingle v. Commissioner of the Social Sec. Admin.,* 2020 WL 6708023, *2 (M.D. Fla. Nov. 16, 2020) ("When evaluating the persuasiveness of medical opinions, the most important factors are supportability and consistency."). "Thus, the ALJ 'will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions' in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c)." *Id.* (footnotes omitted).

The ALJ analyzed the medical opinion evidence of consultative examiner, Dr. John Goff, in the following manner:

> As previously discussed, on November 12, 2019, the claimant underwent a neuropsychological evaluation by John Goff, Ph.D. on referral from the claimant's attorney. Following examination, it was opined that the claimant was functioning at the lower end of the borderline range of psychometric intelligence. It was also felt that the claimant was depressed, had a decline from previous levels of functioning, had word finding difficulty, and had problems with his memory. The diagnostic impressions included major neurocognitive disorder associated with the seizure disorder and

15

>   major depressive disorder, single episode, continuous associated with the medical condition. Notably, Dr. Goff mentioned that he had six PDF files for review "provided to me by Mr. Coplin's office." It is unclear what these records were and whether they were just copies of the records currently in the file. In addition, I note that this is a one-time examination conducted at the behest of the claimant's attorney. Notably, his mother participated in the examination which calls into question whether the claimant could provide an accurate history if left to his own devices. In addition, the report indicates that the claimant had speech difficulties and word finding issues, which have never been noted in prior medical evidence of record and which was not present at all on the day of the hearing. With respect to the memory testing that was performed, there were no issues with the claimant's memory at the hearing. In addition, prior to an earlier application for benefits, the claimant complained of memory issues but then was able to secure a semi-skilled job as a truck driver. All of this indicates that the memory issues were not affecting his day-to-day activities. For these reasons, I am not persuaded by Dr. Goff's opinions.

(Doc. 13, PageID. 87) (internal citations omitted).

There can be little question but that the ALJ in this case sufficiently addressed the supportability and consistency factors (*see id.*), as required by the Commissioner's new regulations, *see Swingle, supra,* at *2. Nevertheless, Skipper contends, as aforesaid, that that the reasons offered by the ALJ for finding Dr. Goff's opinion not persuasive are inconsistent with the evidence of record (*see* Doc. 16, PageID. 949-51) and that, therefore, the ALJ violated the regulations by improperly finding Dr. Goff's opinion unsupported and inconsistent (*see id.,* PageID. 954-55).

The undersigned cannot wholly agree with Plaintiff's arguments about the ALJ's analysis of Dr. Goff's, as the Court finds that analysis, on the whole, supported by substantial evidence. To be sure, it was disingenuous of the ALJ to suggest that Dr. Goff did not make clear what records he had been supplied by counsel for Plaintiff (*see* Doc. 13, PageID. 87), because the consultative psychologist described those records in detail (*see id.,* PageID. 871-72) and this description sufficiently establishes that these

16

records were just copies of the records currently in the file (*compare id. with id.,* PageID. 87). And while the undersigned also finds it difficult to follow the ALJ's logic in referencing Skipper's mother, it is clear to the undersigned that the remaining reasons the ALJ offered for finding Goff's opinion unpersuasive (the primary reasons relied on by the ALJ) are sufficient to require the upholding of the decision denying benefits. Importantly, the Court has reviewed the medical evidence of record in detail (*see* Doc. 13, PageID. 704-07, 734-57, 763-70, 772-78, 782-85, 791-869, 892-914, 916-22 & 924-38), as well as the transcript of Skipper's hearing testimony (*see id.,* PageID. 167-202), and finds that the ALJ is absolutely correct that nothing about the medical evidence or Skipper's hearing testimony suggests claimant had the speech difficulties or word finding issues noted by Dr. Goff (*compare id. with id.*, PageID. 871-80).[12] As for the memory testing performed by Dr. Goff, the undersigned need agree with the ALJ that Skipper's hearing testimony betrayed no memory issues/problems, other than as self-reported (*see id.,* PageID. 167-202). Indeed, Skipper did not hesitate at all, for example, in identifying the ages of his children and testifying that he could use a telephone to call them (*see id.,* PageID. 181), the year he last worked (*id.,* PageID. 182) and the number of years he worked for the City of Greensboro driving a garbage truck (*see id.,* PageID. 197), when he last mowed his yard (*id.,* PageID. 183), that he received his medication in the mail through a free drug program at UAB (*see id.,* PageID. 175-76), his age and that he was a high school graduate (*id.,* PageID. 173), that Dr. Houston is the physician who prescribed the medication for his seizure disorder (*id.*), that he takes the "generic brand"

---

[12]   In other words, Dr. Goff's findings in this regard are not supported by (or consistent with) the remaining evidence of record, including Plaintiff's own testimony.

for Effexor (*id.,* PageID. 177), that he lives in a trailer by himself (*see, e.g., id.,* PageID. 178), that he was told by his doctor not to cook for himself (*see id.,* PageID. 178-79), and the ages of his mother and grandmother (*id.,* PageID. 180). Accordingly, Skipper's own hearing testimony, as a whole, does not support Dr. Goff's findings with respect to memory testing.[13] And, finally, the undersigned perceives no impropriety in the ALJ referencing that "prior to an earlier application for benefits, the claimant complained of memory issues but then was able to secure a semi-skilled job as a truck driver[]" (Doc. 13, PageID. 87) because it offers an apt comparison and supports the ALJ's finding that Plaintiff's memory is not as impaired as Goff's evaluation appears to suggest. In other words, the information referenced by the ALJ, which Plaintiff does not refute (*see* Doc. 16, PageID. 951), suggests a pattern of Skipper alleging memory problems but then taking actions (such as continuing to work as a truck driver or seamlessly answering numerous questions requiring use of recent and remote memory) that shine an unflattering light on those allegations. Accordingly, this Court finds no error with the ALJ finding Dr. Goff's November 12, 2019 opinion unpersuasive and, therefore, this assignment of error is **OVERRULED.**

---

[13]  The undersigned also notes that even though Dr. Litton, a psychologist at UAB who treated Plaintiff in 2020, was aware of Plaintiff's memory issues (*see* Doc. 13 PageID. 894 & 896), he consistently "scored" Plaintiff on the GAF Scale at a 68 or 69 (*see id.,* PageID. 893, 895 & 897), scores indicative of an individual who has some symptoms or some difficulty in social or occupational functioning but "generally function[s] pretty well" in terms of everyday activities, and is an individual who enjoys "some meaningful interpersonal relationships." *See* https://www.webmd.com/mental-health/gaf-scale-facts (last visited April 11 2022). This medical evidence from Dr. Litton offers but further evidence supportive of the ALJ's conclusion that Skipper's memory issues do not significantly impact his day-to-day activities. (*See* Doc. 13, PageID. 87).

In light of the foregoing, and because the Plaintiff makes no argument that the ALJ failed to identify other work existing in significant numbers in the national economy that he was capable of performing based upon the ALJ's RFC assessment, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Sec.,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given his RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Sec.,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff a period of disability, disability insurance benefits, and supplemental security income be affirmed.

**DONE** and **ORDERED** this the 15th day of April, 2022.

                                s/P. Bradley Murray  
                                **UNITED STATES MAGISTRATE JUDGE**